

# IN THE
# TENTH COURT OF APPEALS

No. 10-16-00262-CR

## EX PARTE JOHN TIMOTHY BRANTLEY

**From the County Court at Law**
**Walker County, Texas**
**Trial Court No. 16-0339A**

## MEMORANDUM OPINION

In two issues, appellant, John Timothy Brantley, complains about the trial court's

denial of his application for writ of habeas corpus. Specifically, Brantley contends that

the trial court abused its discretion in concluding that: (1) his application is barred by the

doctrine of laches; and (2) a collateral consequence is insufficient to invoke habeas-corpus

jurisdiction. Because the trial court did not abuse its discretion in denying the application

based on the doctrine of laches, we affirm.

### I. BACKGROUND

Here, Brantley was charged by information with intentionally, knowingly, or

recklessly causing bodily injury to April Mahaffey, a family member, on or about

December 5, 1998.  On January 14, 1999, Brantley pleaded guilty to the misdemeanor offense of assault.[1]  The trial court deferred a finding on Brantley's guilt and placed him on deferred-adjudication probation for one year with a $500 fine.

On July 5, 2015, Brantley filed his application for writ of habeas corpus.  In his application, Brantley argued that his 1999 guilty plea was unknowing and involuntary, because he was not advised or warned that he was pleading guilty to an offense that included an affirmative finding of family violence, and because he has suffered a collateral consequence as a result of the family-violence finding.[2]  The State responded that Brantley's application is barred by the doctrine of laches.

Ultimately, the trial court denied Brantley's application and made the following findings:

**FINDINGS OF FACT**

On January 14, 1999, the defendant pled guilty to the offense of assault.  The Court deferred a finding of guilt and the defendant was placed on deferred adjudication for one year.

**CONCLUSIONS OF LAW**

1.  This Court finds the application for the writ is barred by the Doctrine of Laches.

2.  This Court finds that the ability to legally obtain a firearm in Texas is a collateral consequence of a plea.  A plea "will not be rendered involuntary

---

[1] Included in the plea papers that Brantley signed was a waiver of counsel.

[2] Brantley has alleged that as a collateral consequence of the family-violence finding, he is ineligible to legally obtain a firearm.

by lack of knowledge as to some collateral consequence." *State v. Jimenez*, 987 S.W.2d 886 (Tex. Crim. App. 1999).

Based on the foregoing findings and the applicable law, this Court finds the Application for Writ of Habeas Corpus is barred by the doctrine of laches.

This appeal followed.

## II. STANDARD OF REVIEW

We review a habeas court's decision on an application for a writ of habeas corpus under an abuse-of-discretion standard. *Ex Parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). An applicant who asserts that his plea was not knowing and voluntary must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We review the record evidence in the light most favorable to the habeas court's ruling, and we must uphold that ruling absent an abuse of discretion. *Id.*; *see Ex parte Rodriguez*, 378 S.W.3d 486, 489 (Tex. App.—San Antonio 2012, pet. ref'd). We give almost total deference to the trial court's findings that are "'based upon credibility and demeanor.'" *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)).

> In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). In an article 11.072 habeas case, such as the one before us, the trial court is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). "There is less leeway in an article 11.072 context to disregard the findings of the trial court" than there is in an article 11.07 habeas case, in which the Court of Criminal Appeals is the ultimate fact finder.

*Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). We must also defer "not only to all implicit factual findings that the record will support in favor of a trial court's ruling, 'but also to the drawing of reasonable inferences from the facts.'" *Amador v. State*, 221 S.W.3d 666, 674-75 (Tex. Crim. App. 2007) (quoting *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).

### III.  THE DOCTRINE OF LACHES

In his first issue, Brantley asserts that the trial court abused its discretion in concluding that the doctrine of laches barred his application for writ of habeas corpus. Specifically, Brantley complains that the delay in filing his application was not attributable to his own doing, but rather due to the Texas Department of Public Safety's recent entry of a retroactive finding of family violence in his 1999 case.

This Court has described the equitable doctrine of laches in criminal cases as follows:

> The equitable doctrine of laches refers to a party's failure to assert a claim which, along with the lapse of time and other circumstances causing prejudice to the adverse party, bars the claim. *Ex parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013). The doctrine also includes the failure, for an unreasonable and unexplained period of time under circumstances permitting diligence, to do what should have been done. *Id.* The trial court considers the totality of the circumstances, including all forms of prejudice, when deciding whether to apply the doctrine of laches. *Id.* at 208.

> Since the decision in *Perez*, the State need not make a particularized showing of prejudice. *Id.* at 215. Rather, the trial court may consider "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant[.]" *Id.* "[T]he longer a

case has been delayed, the more likely it is that the reliability of a retrial has been compromised." *Id.* at 218. This includes "the diminished memories of trial participants and the diminished availability of the State's evidence, both of which may often be said to occur beyond five years after a conviction becomes final." *Id.* at 216.

It may be proper for a reviewing court to consider, among all relevant circumstances, factors such as the length of the applicant's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay. *Id.* at 217. No single factor is necessary or sufficient. *Id.* Instead, courts must "engage in a difficult and sensitive balancing process" that takes into account the parties' overall conduct. *Id.* In considering whether prejudice has been shown, a court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial. *Id.* If prejudice to the State is shown, a court must then weigh that prejudice against any equitable considerations that militate in favor of granting habeas relief. *Id.*

The degree of proof required is a "sliding scale." *Id.* at 217. That is, the extent of the prejudice the State must show bears an inverse relationship to the length of the applicant's delay. *Id.* The longer the delay, particularly when the delay exceeds five years after conclusion of direct appeals, the less evidence the State must present to demonstrate prejudice. *Id.* at 215. "[D]elays of more than five years may generally be considered unreasonable in the absence of any justification for the delay." *Id.* at 216 n.12.

*Ex parte Morejon*, No. 10-14-00163-CR, 2015 Tex. App. LEXIS 5487, at **3-5 (Tex. App.—

Waco May 28, 2015, no pet.) (mem. op., not designated for publication).

Here, the record reflects that Brantley filed his application for writ of habeas

corpus on July 5, 2016—more than seventeen years after he was charged by information

with assaulting Mahaffey, a family member. *See Perez*, 398 S.W.3d at 215-16. However,

on January 14, 1999, Brantley signed papers pleading guilty to "the misdemeanor offense

of assault, said offense having been committed on or about the 5th day of December 1998." Nowhere in the plea papers or the corresponding terms and conditions of Brantley's probation does it state a family-violence finding. And in his affidavit in support of his application, Brantley explained:

> Recently, I attempted to obtain a firearm but was told that I was ineligible because the Texas Department of Public Safety classified my case as an assault with an affirmative finding of family violence. I was never told that an affirmative finding of family violence would be found in this case. I would never have pleaded guilty had I known of an affirmative finding or future collateral consequences which deem my case a family violence case.

Nevertheless, the delay of more than seventeen years between the plea and the application is of particular importance. Brantley's reason for the delay was only his lack of knowledge that the plea could result in him not obtaining a firearm. Furthermore, other than Brantley's affidavit, the record does not contain any evidence—namely, any documentation from the Texas Department of Public Safety—showing the alleged affirmative finding of family violence and the subsequent denial of ownership of a firearm. *See Ex parte Mowbray*, 943 S.W.2d at 465 (explaining that the fact finder is the exclusive judge of the credibility of the witnesses and that the factfinder resolves conflicts in the evidence); *see also Kniatt*, 206 S.W.3d at 664 (noting that an applicant asserting that his plea was not knowing and voluntary must prove his claim by a preponderance of the evidence).

Additionally, in its response to Brantley's application, the State contended that: (1) Brantley has not alleged or shown any bad faith or official negligence on the part of

the State; (2) under the applicable case law, seventeen years was an unreasonably long time to wait to file his application; and (3) the "long period of time . . . prejudices the State in defending against the Defendant's application," especially given the difficulty in procuring witnesses and prosecutors with recollections of the 1999 proceedings. In its briefing, the State also points out that "[a]ny additional evidence that may have existed at the time have been lost, due to the retention policies of both the Criminal District Attorney's Office and the Court." Accordingly, the State asserts that a retrial of this offense "would be impractical and potentially impossible"—a sentiment with which we agree given the more than seventeen-year delay between the plea and the application.

Therefore, based on the totality of the circumstances, we cannot conclude that the trial court abused its discretion in applying the equitable doctrine of laches to deny Brantley's application for writ of habeas corpus. *See Perez*, 398 S.W.3d at 210-218; *Ex Parte Wheeler*, 203 S.W.3d at 324; *see also Ex parte Morejon*, 2015 Tex. App. LEXIS 5487, at **3-5. We overrule Brantley's first issue.

## IV. COLLATERAL CONSEQUENCES

In his second issue, Brantley contends that the trial court abused its discretion in determining a collateral consequence is insufficient to invoke habeas-corpus jurisdiction. However, because we have concluded that the trial court did not abuse its discretion in denying Brantley's application for writ of habeas corpus based on the doctrine of laches, his second issue is immaterial; therefore, we need not address it. *See State v. Dixon*, 206

S.W.3d 587, 590 (Tex. Crim. App. 2006) ("We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case." (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990))); *see* TEX. R. APP. P. 47.1.

## V.    CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Chief Justice Gray dissenting with a note)*
Affirmed
Opinion delivered and filed May 31, 2017
Do not publish
[CR25]

**\*(**Chief Justice Gray dissents.  A separate opinion will not issue.  Chief Justice Gray provides the following note.  The Court affirms the trial court's denial of the article 11.072 writ on the basis of laches.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West 2015).  I find no evidence to support laches.  Unlike *Morejon*, relied upon by the Court, there does not appear to have been an evidentiary hearing in this proceeding.  *See Ex parte Morejon*, No. 10-14-00163-CR, 2015 Tex. App. LEXIS 5487 (App.—Waco May 28, 2015, no pet.).  Further, the only affidavit that supports the application is that of Brantley.  I do not find any other affidavits or other potential forms of evidence upon which the trial court could have made the finding.  Delay, alone, is not adequate to support laches.  *See Ex parte Perez*, 398 S.W.3d 206, 217 (Tex. Crim. App. 2013) (no single factor is necessary or sufficient; extent of prejudice the State must "show" is inversely related to applicant's length of delay).  Accordingly, I dissent to the judgment of the court which affirms the trial court's denial

of the application for a writ of habeas corpus by Brantley upon the finding that it is barred by laches.)

